**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

IN RE:

STEVEN M. LEONI,                                    CASE NO. 20-40157-KKS
                                                    CHAPTER 11

      Debtor.

_____/

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**

Dated: December 1, 2020                **Bruner Wright, P.A.**
                                       *Counsel for the Debtor-In-Possession*
                                       2810 Remington Green Circle
                                       Tallahassee, FL 32308
                                       Office: (850) 385-0342
                                       Fax: (850) 270-2441

                           By:    */s/ Robert C. Bruner*
                                  Robert C. Bruner
                                  Florida Bar No. 0065876
                                  rbruner@brunerwright.com
                                  Byron Wright III
                                  Florida Bar No. 118971
                                  twright@brunerwright.com

**STEVEN M. LEONI, DEBTOR IN POSSESSION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, FILES THIS PLAN OF REORGANIZATION.**

**STEVEN LEONI SHALL NOT SOLICIT ACCEPTANCES OF THE PLAN UNTIL SUCH TIME AS THE DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT AND DISTRIBUTED, WITH APPROPRIATE BALLOTS, TO ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ENTITLED TO VOTE ON THE PLAN.**

**STEVEN LEONI RESERVES THE RIGHT TO AMEND AND/OR MODIFY THE PLAN FROM TIME TO TIME HEREAFTER.**

**ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR ARE HEREBY ADVISED AND ENCOURAGED TO READ THE DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## INTRODUCTION

Steven M. Leoni ("Leoni" or "Debtor" or "Steven Leoni"), debtor in possession under Chapter 11 of the Bankruptcy Code, hereby proposes this Chapter 11 Plan of Reorganization, dated as of the first date set forth above (the "Plan"). Leoni requests Confirmation of this Plan pursuant to Section 1129 of the Bankruptcy Code. Any agreements and/or other documents that are referenced in this Plan, but which are not attached as exhibits to this Plan, are available upon written request to counsel for the Debtor indicated on the first page of this Plan.

In summary, the Plan provides that Steven Leoni's non-filing spouse, Christine Leoni ("C. Leoni"), pursuant to the Leoni Settlement as described herein, will contribute $750,000.00 toward the Plan as set forth in more detail below. That amount, in addition to $31,000.00 representing the value of the Debtor's non-exempt assets, will be distributed amongst the Creditors as set forth below.

Only the Plan, Disclosure Statement and Ballot have been approved by Leoni (subject to Bankruptcy Court approval) for use in soliciting acceptances and votes in favor of the Plan.

1

LEONI BELIEVES CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF CREDITORS AND RECOMMENDS CREDITORS VOTE TO ACCEPT THE PLAN.

## ARTICLE 1

## DEFINITIONS & RULES OF CONSTRUCTION

### A.    Definitions and Scope of Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in Article 1 of the Plan.  In all references to any parties, persons, entities or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.  Any term used in this Plan that is not specifically defined, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.  In addition to terms that may be defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) shall have the following meanings:

1.1    "Administrative Expense" means a Claim for costs and expenses of administration of the Estate under Section 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estate incurred after the Petition Date; (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (c) all fees and charges assessed against the Estate under 28 U.S.C. §§ 1911-1930; (d) all obligations designated as an Allowed Administrative Expense pursuant to an order of the Bankruptcy Court; (e) any Claims for Tax incurred by the Debtor after the Petition Date or relating to a tax period which occurs after the Petition Date; and (f) any Cure Claims.

1.2    "Administrative Expense and Priority Claim Bar Date" means (i) the thirtieth (30th) day after the Effective Date, or (ii) such other date as may be set by order of the Bankruptcy Court.

1.3    "Administrative Expense and Priority Claim Objection Deadline" means the later of (i) the ninetieth (90th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court.

1.4    "Administrative Operating Expense" means all Administrative Expenses other than Administrative Expenses of Professionals.

1.5    "Allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is set forth in a filed Proof of Claim as to which no timely objection has been filed; (b) a Claim that has been allowed by a Final Order; (c) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtor prior to the Effective Date and approved by the Bankruptcy Court or (ii) in any stipulation of amount and nature of Claim executed by the Debtor on or after the Effective Date; (d) a Claim relating to a rejected Executory Contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in

either case only if a Proof of Claim has been timely filed by the Claimant before the applicable bar date for such claim or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is Allowed pursuant to the terms of this Plan.

1.6     "Allowed Amount" means the dollar amount in which a Claim is allowed.

1.7     "Allowed Claim" means a Claim of the type described that has been Allowed.

1.8     "Allowed Administrative Expense" means an Administrative Expense, or any portion thereof, for which a timely and proper request for payment has been made and that has been allowed by the Bankruptcy Court or by any professional fee allowance procedures authorized by the Bankruptcy Court, in accordance with applicable provisions of the Bankruptcy Code.  An Administrative Expense may be deemed an Allowed Administrative Expense even if it is not liquidated as of the Confirmation or Effective Date, or it is liquidated in a court of competent jurisdiction other than the Bankruptcy Court.  To the extent that the Administrative Expense and Priority Claim Bar Date established by this Plan does not apply to a particular Administrative Expense, such Administrative Expense may be asserted at any time, and the discharge injunction shall not bar the liquidation of the amount of an Allowed Administrative Expense in a court of competent jurisdiction.  No Allowed Administrative Expense may include non-compensatory penalties, fines, punitive damages, exemplary damages, multiple damages, or any other Claims or obligations that do not compensate for actual losses incurred.

1.9     "Assets" means all of the right, title and interest of the Debtor in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitutes property of the Debtor's Estate within the meaning of Section 541 of the Bankruptcy Code.

1.10     "Assumed Executory Contract" means all Executory Contracts and unexpired leases assumed by the Debtor under Section 365 of the Bankruptcy Code.

1.11     "Avoidance Power Causes of Action" means any and all Claims and Causes of Action which the Debtor has asserted or may assert under Sections 510, 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code.

1.12     "Ballot" means the ballot accompanying the Disclosure Statement and Plan, upon which Holders of Impaired Claims entitled to vote shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the Voting Instructions, and which must be actually received on or before the Ballot Deadline.

1.13     "Ballot Deadline" means the last day to file, with the Bankruptcy Court, a Ballot as fixed by order of the Bankruptcy Court approving the Disclosure Statement.

1.14     "Bankruptcy Code" means the United States Bankruptcy Code, 11 U.S.C. §§ 101 et seq., as now in effect or as may be amended from time to time.

1.15     "Bankruptcy Court" means the United States Bankruptcy Court for the Northern District of Florida, Tallahassee Division.

1.16    "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as the same shall be applicable to this Case.

1.17    "<u>Bar Date</u>" means June 12, 2020, the general bar date set by the Bankruptcy Court for the filing of Claims.

1.18    "BBX" means Creditor BBX Capital Asset Management, LLC.

1.19    "<u>Bruner Wright</u>" means the law firm of Bruner Wright, P.A., Steven Leoni's counsel in this Case.

1.20    "<u>Business Day</u>" means any day other than (a) a Saturday, (b) a Sunday, (c) a "legal holiday," as defined in Bankruptcy Rule 9006(a), or (d) a day on which commercial banks in Tallahassee, Florida are required or authorized to close by law.

1.21    "<u>Cash</u>" means legal tender of the United States of America and equivalents thereof.

1.22    "<u>Causes of Action</u>" means any and all actions, causes of action controversies, damages, liabilities, liens, obligations, rights, suits or proceedings, damages, judgments, claims, demands and rights of contribution or indemnification whatsoever, whether known or unknown, reduced to judgment, disputed or undisputed, liquidated or unliquidated, secured or unsecured, existing or hereafter arising, in law, equity, or otherwise.

1.23    "<u>Chapter 11 Case</u>" means this Chapter 11 Case, in which Steven M. Leoni is the Debtor.

1.24    "<u>C. Leoni</u>" means Christine S. Leoni, the Debtor's non-filing spouse.

1.25    "<u>Claim</u>" shall have the meaning assigned to such term in Section 101(5) of the Bankruptcy Code, including, but not limited to: (a) any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.26    "<u>Claimant</u>" means the Holder of a Claim.

1.27    "<u>Claims Register</u>" means the register maintained by the Clerk that contains a list of all of the Proofs of Claim filed by Holders of Claims or Interests.

1.28    "<u>Class</u>" means a category of Claims or Interests as specified in Article 4 of the Plan.

1.29    "<u>Class 1 Claim</u>" means the Claim of the Leon County Tax Collector.

1.30    "<u>Class 2 Claim</u>" means the Claim(s) of Wells Fargo.

1.31    "Class 3 Claim" means the Unsecured Claim of BBX Capital Asset Management, LLC ("BBX").

1.32    "Class 4 Claim" means the Unsecured Contingent Guaranty Claim of Beach Community Bank.

1.33    "Class 5 Claim" means the Claim of a Holder of a General Unsecured Claim.

1.34    "Clerk" means the Clerk of the Bankruptcy Court.

1.35    "Collateral" means any Property or interest in Property of the Estate or the Debtor subject to a Lien to secure the payment or performance of a Claim, which lien is valid, perfected and enforceable under applicable law, and is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

1.36    "Confirmation" means entry of the Confirmation Order of the Bankruptcy Court confirming the Plan.

1.37    "Confirmation Date" means the date the Confirmation Order is entered on the docket confirming the Plan pursuant to Section 1129 of the Bankruptcy Code

1.38    "Confirmation Hearing" means the hearing to be held by the Bankruptcy Court for the purpose of considering confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.39    "Confirmation Order" means an order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.40    "Creditor" means the Holder of a Claim, within the meaning of Section 101(10) of the Bankruptcy Code, including Secured Creditors, Unsecured Creditors, and Creditors holding Claims for Administrative Expenses, Priority Claims and Cure Claims.

1.41    "Cure Claim" means a Claim arising in connection with the Debtor's obligations under Section 365 of the Bankruptcy Code relating to an Assumed Executory Contract.

1.42    "Debtor" means the Debtor, Steven M. Leoni.

1.43    "Disallowed" means, with respect to a Claim, Interest, or Administrative Expense, all or a portion thereof that is determined is not allowed under the Bankruptcy Code either by Final Order, the Plan, or under a stipulation or settlement with the Debtor entered into after the Effective Date.

1.44    "Disallowed Claim" means a Claim of the type described that has been Disallowed.

1.45    "Disclosure Statement" means the Disclosure Statement filed by the Debtor, including exhibits and schedules, as it may be modified, supplemented or amended.

1.46    "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the deadline fixed by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim for which a Proof of Claim is required to be filed and no such Proof of Claim is filed or, if filed, is filed after any applicable bar date for such Claim; (iii) any contingent or unliquidated Claim; and (iv) a Claim that is designated as a Disputed Claim pursuant to the terms of this Plan. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection and shall be deemed Allowed as to the portion for which no objection is made.

1.47    "Distribution" means a distribution of Cash to a Creditor on account of an Allowed Claim pursuant to the terms of the Plan.

1.48    "Distribution Date" means the first business day of the second full month after the Effective Date.

1.49    "Effective Date" means the date on which the Plan shall become effective, after the conditions set forth in Article 10 have been satisfied or waived.

1.50    "Equity Interest" means any share of common stock, membership interest or other ownership interest in the Debtor which existed as of the Petition Date.

1.51    "Estate" means the estate of the Debtor created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.52    "Executory Contract" means any executory contract or unexpired lease, subject to Section 365 of the Bankruptcy Code, between the Debtor and any other Person or Persons, but specifically excluding all of the contracts and agreements entered into after the Petition Date and/or pursuant to this Plan.

1.53    "Fee Application" means an application by a Professional for a Professional Fee and Expense Claim.

1.54    "Final Order" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal which has not been reversed, stayed, modified or amended, and as to which (a) the time to appeal or petition for review, rehearing, or certiorari has expired and as to which no appeal or petition for review, rehearing, or certiorari is pending or (b) any appeal or petition for review, rehearing, or certiorari has been finally decided and no further appeal or petition for review or certiorari can be taken for granted.  The possibility that a motion filed under Rule 60 of the Federal Rules of Civil Procedure or under the applicable Bankruptcy Rules, may be filed relating to such order, shall not cause such order not to be a Final Order.

1.55    "General Unsecured Claim" means any unsecured Claim against the Debtor, including unsecured trade debt, contribution and indemnification Claims, Claims for reimbursement and employee contract Claims, if any, unsecured deficiency Claims, and lease and contract rejection Claims against the Debtor; but does not include Administrative Expenses,

Priority Claims, Administrative Operating Expenses, Professional Fees or Claims of Insiders and Equity Interests.

1.56    "<u>Governmental Unit</u>" shall have the meaning set forth in Section 101(27) of the Bankruptcy Code.

1.57    "<u>Governmental Unit Bar Date</u>" means September 30, 2020, the bar date set by the Bankruptcy Court for the filing of Claims by a Governmental Unit.

1.58    "<u>Holder</u>" means the beneficial holder of any Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a beneficial holder of a Claim or Interest in such Class or of such type.

1.59    "<u>Homestead</u>" means the real property located at 3951 W Millers Bridge Rd, Tallahassee, FL 32312, in which Steven Leoni currently resides as his homestead.

1.60    "<u>Impaired</u>" means any Claim or Interest in an Impaired Class.

1.61    "<u>Impaired Class</u>" means an impaired class within the meaning of Section 1124 of the Bankruptcy Code.

1.62    "<u>Insider</u>" has the meaning set forth in Section 101(31) of the Bankruptcy Code.

1.63    "<u>Interest(s)</u>" means any vested or unvested stock, membership or other equity ownership interest in the Debtor, whether or not transferable, of the type specified in Section 101(16) of the Bankruptcy Code and all dividends and distributions with respect to such stock or interest and all rights, options, warrants, puts, calls, or other rights to acquire any stock or other equity ownership interest in the Debtor as of the Petition Date.

1.64    "<u>Liabilities</u>" means any and all liabilities, obligations, judgments, damages, charges, costs, debts, and indebtedness of any and every kind and nature, whether owing, arising, due or payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen or unforeseen, in law, equity or otherwise, of or relating to the Debtor, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor, any Property of the Debtor, the business or operation of the Debtor, the Chapter 11 Case, or the Plan, including any and all liabilities, obligations, judgments, damages, charges, costs, debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory; provided, however, that when used in the Plan, the term Liabilities shall not include any obligations of the Debtor expressly set forth in the Plan.

1.65    "<u>Lien</u>" has the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a lien that has been avoided in accordance with Section 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

1.66    "<u>Litigation Claims</u>" means, except as otherwise provided in this Plan, the Confirmation Order or any document, instrument, release or other agreement entered into in

connection with the Plan, all Claims, actions, choses in action, Causes of Action, suits, debts, dues, sums of money, accounts, rights to payment, reckonings, bonds, bills, specialties, controversies, variances, trespasses, damages, judgments, third-party Claims, counterclaims and cross Claims (including, but not limited to, any Chapter 5 avoidance or recovery actions under the Bankruptcy Code or avoidance or recovery Claims recognized under any applicable state law) of whatever kind or nature, and whether known or unknown, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, and whether assertable directly or derivatively in law, equity, or otherwise, that are or may be pending on the Effective Date or instituted after the Effective Date based on law or equity.  Litigation Claims include, without limitation, those which are: (i) Property of the Estate under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code or any applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (x) against any and all current and/or former officers, members and directors of the Debtor or any affiliates thereof; (xi) for breach of fiduciary duty or aiding and abetting breach of fiduciary duty; (xii) under and pursuant to any policies for insurance, including for bad faith, maintained by the Debtor, including, without limitation, any liability insurance policy; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, or (xxvi) any Claim held or assertable by the Debtor.

1.67    "Person(s)" means an individual, a corporation, a limited liability company, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof, or other entity.

1.68    "Petition Date" means April 3, 2020, the date on which the Debtor filed his voluntary petition for relief commencing the Chapter 11 Case.

1.69    "Plan" means this Plan including exhibits, supplements, appendices, and schedules, as they may be altered, amended or modified from time to time.

1.70    "Post-Petition" means arising or accruing on or after the Petition Date and before the Effective Date.

1.71    "Pre-Petition" means arising or accruing prior to the Petition Date.

1.72    "Priority Claim" means all Priority Non-Tax Claims and all Priority Tax Claims.

1.73    "Priority Non-Tax Claim" means any Claim against the Debtor for an amount entitled to priority pursuant to Section 507(a) of the Bankruptcy Code and that is not an Administrative Claim or a Priority Tax Claim.

1.74    "Priority Tax Claim" means any Claim against the Debtor of a Governmental Unit for an amount entitled to priority under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.75    "Pro Rata" means the proportion that the amount of any Claim in a particular Class bears to the aggregate amount of all Claims in such Class.

1.76    "Professional" means a Person retained in the Chapter 11 Case or to be compensated pursuant to Sections 327, 328, 330 or 503(b) of the Bankruptcy Code.

1.77    "Professional Fee and Expense Claim" means a Claim of a Professional for compensation and reimbursement of costs and expenses for services rendered after the Petition Date and prior to and including the Effective Date.

1.78    "Professional Fee Bar Date" means the thirtieth (30th) day after the Effective Date.

1.79    "Professional Fee Objection Deadline" means the later of (i) the ninetieth (90th) day after the Effective Date, or (ii) such greater period of limitation as may be fixed or extended by the Bankruptcy Court.

1.80    "Proof of Claim" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rule 3001, 3002 or 3003.

1.81    "Property" means the property or Assets of the Debtor of any kind, whether real, personal or mixed, tangible, intangible, now owned or hereafter acquired or arising, wherever located, and any interest of any kind.

1.82    "Record Date" means the day that is five (5) Business Days from and after the Confirmation Date.

1.83    "Rejected Contracts" means those unexpired leases and executory contracts to be rejected pursuant to Section 365(a) of the Bankruptcy Code.

1.84    "Rejection Claim" means any Claim against the Debtor for damages arising as a proximate result of the rejection of an Executory Contract under Section 365 of the Bankruptcy Code.

1.85    "Related Persons" means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors, agents, attorneys and other professionals (whether engaged prior to or subsequent to the Petition Date), and any Person claiming by or through any of them, but specifically excluding Insiders, guarantors and each of these Person's and any Insiders' respective predecessors, successors, assigns, executors, administrators, agents, heirs, relatives and beneficiaries.

1.86    "Retained Real Property" means the Homestead to be retained by Leoni immediately after the Effective Date pursuant to the Plan.

1.87    "Schedules" means the schedules of Assets and Liabilities and the statement of financial affairs filed under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Confirmation Date.

1.88    "Secured Claim" means any Claim which is secured by a valid Lien, security interest, or other interest in Property in which the Debtor has an interest, which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such Property as determined pursuant to Section 506 of the Bankruptcy Code.  A Secured Claim shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be such in the Plan, or the underlying Lien is recognized as valid by the Bankruptcy Court.  The difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

1.89    "Secured Creditor" means any Creditor holding a Secured Claim.

1.90    "Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax.  Tax shall include any interest, penalty, or additions attributable to, imposed on or with respect to such assessments.

1.91    "Unclassified Claim" means a Claim that is not classified under this Plan.

1.92    "Unimpaired" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

1.93    "Unsecured Claim" means any Claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date, and which is not (a) a Secured Claim pursuant to Section 506 of the Bankruptcy Code, or (b) a Claim entitled to priority under Section 503 or Section 507 of the Bankruptcy Code.

1.94    "Unsecured Creditor" means any Creditor holding an Unsecured Claim.

1.95    "U.S. Trustee" means the Office of the United States Trustee for Region 21.

1.96    "Voting Instructions" means the instructions for voting on the Plan contained in the Disclosure Statement and in the Ballot.

1.97    "Wells Fargo" means Wells Fargo Bank, N.A., Holder of a Class 2 Claim.


B.    **Rules of Construction**

Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.  Any reference to a contract, instrument, release, agreement, or other document means such document as it is or shall be, including all amendments or modifications and any schedule, annex, or exhibit.  Unless otherwise specified, all references to articles, sections, subsections, clauses, paragraphs, schedules, and exhibits are references to the Plan.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection,

clause, or paragraph.  A term that is not defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code or Bankruptcy Rules and the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of the Plan.  In the event of an inconsistency, the provisions of the Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of the Plan.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE 2

## TREATMENT OF ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

Certain Claims and expenses are automatically entitled to specific treatment under the Bankruptcy Code.  They are not considered impaired, and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Bankruptcy Code.  Only Administrative Expenses, Priority Claims or Professional Fee and Expense Claims that are Allowed shall receive a Distribution under this Plan.

2.1     Unclassified Claims.  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expenses and Priority Tax Claims (if any) against the Debtor are not classified for purposes of voting on, or receiving Distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims are instead treated separately in accordance with this Article 2 and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

2.2     Priority Tax Claims.  Unless the holders of such Claims agree otherwise, Priority Tax Claims will receive the present value of such Claim in regular installments paid over a period not exceeding five (5) years from the order of relief, with interest.  The interest rate for these Claims shall be as set forth in the Internal Revenue Code, Sections 6601 and 6621.

2.3     Administrative Expense and Professional Fees and Expenses.  Except to the extent that the Holder of an Allowed Administrative Expense or Allowed Professional Fee and Expense Claim agrees to a different treatment, the Debtor shall pay each Allowed Administrative Expense and Allowed Professional Fee and Expense Claim, in full, in Cash, on the later of the Effective Date and entry of a Final Order allowing such Administrative Expense or Professional Fee and Expense Claim.

2.4     Administrative Operating Expenses.  Allowed Administrative Operating Expenses incurred in the ordinary course of the Debtor's business, as operated by the Debtor, shall be paid on the Effective Date by the Debtor in accordance with the terms of any agreements, contracts, documents or Bankruptcy Court orders governing such transactions.

2.5     Post-Effective Date Professional Fees and Expenses.  Any professional fees or reimbursement of expenses incurred by the Debtor and the Estate subsequent to the Effective Date

may be paid by the Debtor without application to the Bankruptcy Court; *provided, however*, that the Bankruptcy Court shall retain jurisdiction to resolve any disputes regarding payment of professional services relating to the implementation of the Plan or the administration of the Chapter 11 Case.

# ARTICLE 3

## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation, and Distribution pursuant to the Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code. Administrative Expenses and Priority Claims, including Priority Tax Claims, Professional Fees and Expense Claims, and Administrative Operating Expenses, have not been classified and are excluded from the following Classes, as set forth in Article 2 hereof, in accordance with Section 1123(a)(1) of the Bankruptcy Code.

3.1    Classification. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest qualifies within the description of such Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class in relation to the Debtor. A Claim or Interest is placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim or Interest is Allowed in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date. The Debtor reserves the right to object to any and all claims pre-confirmation and post-confirmation. Claims are classified for all purposes, including voting, Confirmation and Distribution under the Plan as follows:

| Class | Status |
|---|---|
| Class 1 – Claims of Leon County Tax Collector & Florida Department of Business and Professional Regulation | Unimpaired |
| Class 2 – Claims of Wells Fargo | Unimpaired |
| Class 3 – Unsecured Claim of BBX | Impaired |
| Class 4 – Unsecured Claim of Beach Community Bank | Impaired |
| Class 5 – General Unsecured Claims. | Impaired |

# ARTICLE 4

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

4.1    Impairment Dispute. If a Holder of a Claim files a timely objection with the Bankruptcy Court as to whether any Claims or any Class of Claims are impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such objection. Any impairment

disputes must be filed such that they are heard by the Bankruptcy Court no later than seven (7) days before the Confirmation Hearing.

4.2     CLASS 1 – CLAIMS OF LEON COUNTY TAX COLLECTOR AND FLORIDA DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION.

The Class 1 Claims include the Claims of the Leon County Tax Collector and the Florida Department of Business and Professional Regulation. The Claim of the Leon County Tax Collector is based upon property taxes that are not due until April 1, 2021 per the Proof of Claim filed on April 17, 2020.  This Claim will be paid in the ordinary course and is unimpaired.  The scheduled Claim of the Florida Department of Business and Professional Regulation in the amount of $15,000.00 will be paid in full within thirty (30) days of the Effective Date.  This Class is not entitled to vote.

4.3     CLASS 2 – CLAIMS OF WELLS FARGO.

Class 2 consists of the Claims of Wells Fargo, and is unimpaired by the Plan.  The Secured Claim of Wells Fargo, which is secured by Steven Leoni's Homestead, will be paid in the ordinary course pursuant to the loan terms. The Debtor also is a personal guarantor of business debt owed to Wells Fargo.  The Claims of Wells Fargo will be paid in the ordinary course pursuant to the loan terms. The Holder of the Allowed Class 2 Claim(s) is not entitled to vote.

4.4     CLASS 3 – UNSECURED CLAIM OF BBX.

Class 3 consists of the Unsecured Claim of BBX, and is impaired by the Plan.  BBX is entitled to vote to accept or reject the Plan at this time, but may not be in the event its Claim is disallowed.

With respect to BBX's Unsecured Claim, the Debtor intends to file an objection to the claim. In addition, BBX's Unsecured Claim, which is based on a prepetition judgment, is on appeal.  In the event that BBX has an Allowed Claim in this case, it shall be paid its pro-rata share of the money available for the Creditors in Class 5. Because the appeal may not be resolved until post-confirmation, money will be held in Debtor's counsel's trust account pending final adjudication of BBX's Unsecured Claim.  In the event BBX's Unsecured Claim is disallowed in its entirety, the money held in Debtor's counsel's trust account will be disbursed pro-rata to the remaining General Unsecured Creditors pursuant to the Plan and/or the Confirmation Order.

4.5     CLASS 4 – UNSECURED CONTINGENT GUARANTY CLAIM OF BEACH COMMUNITY BANK.

Class 4 consists of the Unsecured Contingent Guaranty Claim of Beach Community Bank, and is impaired by the Plan.  Beach Community Bank is entitled to vote to accept or reject the Plan.

Beach Community Bank's Claim, while unsecured with respect to Steven Leoni, is secured by property owned by a non-debtor entity.  The value of that property is currently unknown.  Beach Community Bank will receive its pro-rata share of the funds paid into the estate via the Leoni

Settlement proceeds in six (6) installments beginning sixty (60) days from the date that the first installment payment is made pursuant to the Leoni Settlement, and in successive installments thereafter within sixty (60) days after each installment payment is made.  In the event any of the Leoni Settlement amounts are prepaid, Beach Community Bank will receive its pro-rata share within sixty (60) days of such prepayment.

### 4.6    CLASS 5 – GENERAL UNSECURED CLAIMS.

Class 5 consists of the General Unsecured Claims listed below, and is impaired by the Plan. The Holders of the Allowed Class 5 Claims are entitled to vote to accept or reject the Plan.

1) JPMorgan Chase Bank, N.A.
2) The Bankruptcy Estate of James Rudnick
3) Banco Popular De Puerto Rico
4) LVNV Funding, LLC
5) Regions Bank
6) Berger Singerman, LLP
7)  Bank of America
8) Barclays Bank Delaware
9) Ameris Bank
10) Capital One
11) Centennial Bank
12) Citibank, N.A.

The Holders of Class 5 General Unsecured Claims will receive their pro-rata share of the Leoni Settlement proceeds in six (6) installments beginning sixty (60) days from the date that the first installment payment is made pursuant to the Leoni Settlement, and in successive installments thereafter within sixty (60) days after each installment payment is made.  In the event any of the Leoni Settlement amounts are prepaid, the claimants will receive their pro-rata share within sixty (60) days of such prepayment.

### 4.7    Full Satisfaction, Discharge and Release.

The payments, distributions, grant of entitlements and other treatment, including cancellation, discharge and/or extinguishment without consideration or distribution, afforded to Holders of Allowed Claims and Interests against the Debtor under this Article 4 shall be in full and complete satisfaction, discharge and release of and in exchange for such Allowed Claims or Interests.

## **ARTICLE 5**

## ACCEPTANCE OR REJECTION OF PLAN;
## NON-CONSENSUAL CONFIRMATION

5.1.　Classes Entitled to Vote.  Each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.

5.2.　Class Acceptance Requirement.  A Class of Claims shall have accepted the Plan if it is accepted by at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that has voted on the Plan pursuant to Section 1126(c) of the Bankruptcy Code.  A Class of Holders of Equity Interests shall have accepted the Plan if it is accepted by at least two-thirds in amount of the Allowed Holders of Equity Interests of such Class that have voted on the Plan in accordance with Section 1126(d) of the Bankruptcy Code.

5.3.　Cramdown and No Unfair Discrimination.  If any Impaired Class of Claims or Interests entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Debtor, as the Plan proponent, reserves the right to undertake to have the Bankruptcy Court confirm the Plan under Section 1129(b) of the Bankruptcy Code, in which case the Plan shall constitute a motion for such relief, or to amend the Plan, or both.

## ARTICLE 6

## MEANS FOR EXECUTION OF THE PLAN

6.1　Sources of Cash for Plan Distributions.  All consideration necessary to fund any payments on behalf of the Debtor pursuant hereto shall be obtained from the Leoni Settlement and Cash from the Debtor, including Cash from the Debtor's business operations.

6.2　Leoni Settlement.　This Plan shall constitute a motion pursuant to Bankruptcy Rule 9019 for approval of the Leoni Settlement as set forth herein below, and the terms of the Leoni Settlement shall be effective upon Confirmation of the Plan. Prior to filing this bankruptcy case, on January 1, 2017, the Debtor's self-settled revocable trust transferred a 49.5% limited partnership interest in Leoni Holdings, LLLP ("Leoni Holdings") to himself and C. Leoni as tenants by the entirety (the "Limited Partnership Interest Transfer").  As explained more fully in the Disclosure Statement, the present value of the Limited Partnership Interest is $2,353,750.00, based upon the valuation performed by the Debtor's valuation experts. There were other prepetition transfers made by the Debtor and/or his trust, but those transfers occurred outside of the four year statute of limitations period for fraudulent transfers under Florida law.   The Leoni Settlement is resolving all claims that the bankruptcy estate may have against C. Leoni, including but not limited to any claims that arose as a result of the Limited Partnership Interest Transfer, and any other prepetition transfers to C. Leoni.

Federal Rule of Bankruptcy Procedure 9019(a) provides that, after notice and a hearing, a court may approve a proposed settlement. The Eleventh Circuit Court of Appeals has promulgated the following test for approval of a settlement:

a) The probability of success in litigation;

b) The difficulties, if any, to be encountered in the matter of collection;

c) The complexity of the litigation involved and the expense, inconvenience, and delay associated therewith; and

d) The interest of the creditors and a proper deference to their reasonable views regarding the matter. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990).

Pursuant to the standard set forth in *Justice Oaks II*, the Settlement Agreement between the parties should be approved by this Court. Further, a limited partnership interest in a family partnership, ***not owned directly by the Debtor***, and that has ***no control over distributions***, are factors that negatively impact the ability to succeed in litigation. The Debtor represents that the Leoni Settlement as set forth below constitutes a reasonable settlement for the estate and benefits all parties involved in this case.

Leoni Settlement Terms:

In return for a full release of any and all potential claims that the bankruptcy estate may have against Steven Leoni's non-filing spouse, C. Leoni, including the claims raised in the adversary proceeding filed by BBX, C. Leoni has agreed to pay a total of $700,000.00[1] (the "Settlement Amount") into the bankruptcy estate in the following manner:

- $100,000.00 payable within thirty (30) days the Effective Date
- Four annual installment payments of $150,000.00, with the first installment due exactly one year from the Effective Date and continuing to be due on the same date for three additional installments.
- In the event C. Leoni misses any payments, she shall have a thirty (30) day cure period for all missed payments. In the event any annual installment is not paid within the cure period, Steven Leoni's bankruptcy estate shall be entitled to a judgment against C. Leoni for any unpaid balance of the Settlement Amount.

6.3    <u>CONTINUATION OF AUTOMATIC STAY</u>.  IN FURTHERANCE OF THE IMPLEMENTATION OF THE PLAN, EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT AND APPLY TO ALL CREDITORS AND BENEFICIARIES HOLDING CLAIMS

---

[1] At the time of the filing of this plan there is an Appeal pending in the State Case BBX Capital Asset Management, LLC vs. Steven M. Leoni, et al CACE 13-016408 (09). Further that the parties including the co-proponent of the plan have scheduled Mediation proceedings which will be conducted in the month of January 2021.

AGAINST THE DEBTOR, THE ESTATE AND THE ASSETS UNTIL THE FINAL DISTRIBUTION DATE.

6.4    <u>Standing of the Debtor</u>.  The Debtor shall have standing to enforce the terms of the Plan until the Plan is completed, the Debtor obtains and discharge, and the case is closed.

6.5    <u>Closing of the Chapter 11 Case</u>.  Notwithstanding anything to the contrary in the Bankruptcy Rules providing for earlier closure of the Chapter 11 Case, when all payments have been made in accordance with the terms of this Plan, and such Cash has been distributed in accordance with this Plan, and the Final Distribution made, the Debtor shall seek authority from the Bankruptcy Court to close the Chapter 11 Case, or re-close the case if this case is administratively closed prior to discharge, in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.6    <u>Reservation of Rights</u>.

As of the Effective Date, all Property of the Debtor and the Estate shall be free and clear of all Liens, Claims, encumbrances, and other interests of Creditors and Holders of Equity Interests, except as provided in the Plan.

The right to enforce, file, litigate, prosecute, settle, and collect on behalf of the Estate and the Debtor (or decline to do any of the foregoing) any and all rights, Claims, Causes of Action, rights to setoff, suits, proceedings or other legal or equitable defenses that constitute Property of the Debtor or its Estate including, but not limited to, any Causes of Action or Claims (i) for recovery of any amounts owing to the Debtor or the Estate (ii) by or on behalf of the Debtor or the Estates against and/or any of their relatives, including, but not limited to, any Cause of Action or Avoidance Power Cause of Action against (a) the Debtor and/or any of his relatives, (b) any Insiders of the Debtor, and (c) for recovery of amounts in connection with any Avoidance Power Cause of Action (collectively, the "<u>Post-Confirmation Estate Claims</u>") are deemed solely reserved with the Debtor and the Estate.  Notwithstanding any orders entered to the contrary during the Chapter 11 Case, from and after the Effective Date, only the Debtor shall have the right to enforce, file, litigate, prosecute, settle and collect any Post-Confirmation Estate Claims.

6.7    <u>Discharge of the Debtor</u>.

Except as otherwise provided in the Plan or in the Confirmation Order, rights afforded in, and all consideration distributed under, this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims of any nature whatsoever against the Debtor or any of his Assets or Properties.  Regardless of whether property shall have been distributed or retained pursuant to the Plan on account of such Claims, upon the Effective Date, the Debtor shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims, including, without limitation, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is Allowed under Section 501 of the Bankruptcy Code, or (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code, or (c) the Holder of a Claim based upon such debt accepted this Plan.

      6.8      <u>United States Trustee Fees</u>.

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtor on or before the Effective Date. Thereafter, the Debtor shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a final decree or an order converting or dismissing the Case.

## <u>ARTICLE 7</u>

## <u>PROVISIONS REGARDING DISTRIBUTIONS UNDER</u><br><u>THE PLAN AND TREATMENT OF DISPUTED CLAIMS</u>

      7.1      <u>In General</u>. Subject to Bankruptcy Rule 9010, and except as otherwise provided in this Article of the Plan, all distributions under the Plan shall be made by the Debtor to the Holder of each Allowed Claim at the address of such Holder as listed on the Schedules as of the Record Date unless the Debtor has been notified in writing of a change of address including, without limitation, by the filing of a Proof of Claim or Interest by such Holder that provides an address for such Holder different from the address reflected on the Schedules.

      7.2      <u>Distributions of Cash</u>. Any payment of Cash made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank, by electronic wire or by other form of wire transfer.

      7.3      <u>Timing of Distributions</u>. Any payment or Distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

      7.4      <u>Minimum Distributions</u>. No payment of Cash less than one hundred dollars ($100.00) shall be required to be made to any Creditor unless a request therefor is made in writing to the Debtor prior to the date that such payment would be required to be paid under this Plan. Whenever payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

      7.5      <u>Undeliverable Distributions</u>. If the Distribution check to any Holder of an Allowed Claim is not cashed within ninety (90) days after issuance by the Debtor, a stop payment order may be given with respect to the check and no further Distributions shall be due to such Holder on account of such Allowed Claim, whose Allowed Claim or Interest shall be discharged and the Holder of such Allowed Claim shall be forever barred from asserting such Claim against the Debtor, his Estate or his Property. In such cases, any Cash held for Distribution on account of such Claim shall remain Property of the Estate and be distributed to other Creditors in accordance with the terms of this Plan.

      7.6      <u>Distributions to Holders as of the Record Date</u>. As of the close of business on the Record Date, the Claims Register shall be closed, and there shall be no further changes in the record Holders of any Claims or Interests. The Debtor shall have no obligation to recognize any transfer of any Claims or Interests occurring after the Record Date. The Debtor instead shall be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject

the Plan) with only those record Holders stated on the Claims Register as of the close of business on the Record Date.

7.7 <u>Distributions Withheld until any Claim(s) Objection(s) are resolved</u>. Pending the resolution or the Court's ruling on any objections to claims, the Debtor shall reserve from the Distributions to be made on such dates to the Holders of such disputed claims, an amount of Cash equal to one-hundred percent (100%) of the Distributions to which Holders of these disputed claims would be entitled under the Plan as of such dates if such disputed claims were Allowed Claims in their Disputed Claim Amounts (the "<u>Reserve</u>"). The Reserve shall be held in trust by the Debtor for the benefit of the Holders of disputed claims whose Claims ultimately become Allowed.

7.8 <u>Interest on Claims</u>. Except as is otherwise set forth in the Plan, Post-Petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a Final Distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. To the extent that any Allowed Claim entitled to a Distribution under the Plan is composed of indebtedness and accrued but unpaid interest thereon, such Distribution shall, to the extent permitted by applicable law, be allocated for federal income tax purposes to the principal amount of the Allowed Claim first and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to the portion of such Allowed Claim representing accrued but unpaid interest.

7.9 <u>Setoffs and Recoupment</u>. The Debtor may, but shall not be required to, set off against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that the Debtor may have had against the Claimant and which Claims became the Property of the Estate as of the Confirmation of the Plan, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such Claim or right against such Claimant.

7.10 <u>Objections to and Resolution of Claims</u>. The Debtor shall be solely responsible for and shall have the exclusive right to make and file objections to all claims before and after the Effective Date. All objections shall be litigated to Final Order; *provided, however*, that the Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court. Unless otherwise ordered by the Bankruptcy Court, the Debtor shall file all objections to any claims and serve such objections on the Holder of the Claim as to which the objection is made no later than ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court or as otherwise provided in the Plan.

7.11 <u>Deadline for Responding to Claim Objections</u>. A Claimant whose Claim has been objected to, must file with the Court and serve upon the Debtor a response to such claim objection within thirty (30) days after service of any objection to its Claim. Failure to file such a response within the thirty (30) day time period shall be cause for the Bankruptcy Court to enter a default judgment against the non-responding Claimant and to thereby grant the relief requested in the Claim objection.

7.12    Objections to and Resolution of Administrative Expenses, Priority Claims, Professional Fee and Expense Claims, and Cure Claims.  The Debtor shall have the exclusive right to make and file objections to Administrative Expenses, Priority Claims, Professional Fees and Expense Claims, and Cure Claims after the Effective Date.  All objections shall be litigated to Final Order; *provided, however*, that the Debtor shall have the authority to compromise, settle, otherwise resolve or withdraw any objections, without approval of the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court, the Debtor shall file all objections to Administrative Expenses, Priority Claims, Professional Fees and Expense Claims, and Cure Claims that are the subject of Proofs of Claim or requests for payment filed with the Bankruptcy Court and serve such objections on the Holder of such Claim, Administrative Expense or Cure Claim as to which the objection is made no later than ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court or as otherwise provided in the Plan.

7.13    Estimation of Claims.  The Debtor, as provided for in this Plan, may at any time request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether any such party previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time during litigation concerning any objection to any Claim.  In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed Amount of such Claim or the maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes the maximum limitation on the amount of such Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

7.14    Compliance with Tax Requirements.  In connection with the Plan and the Distributions made in accordance hereto, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, if any, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

## ARTICLE 8

## IRS CIRCULAR 230 NOTICE

TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S.  FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS  PLAN (INCLUDING ANY EXHIBITS OR ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY TAXPAYER FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY

BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (B) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IS WRITTEN IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN AND (C) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## ARTICLE 9

## EXECUTORY CONTRACTS AND LEASES

9.1     <u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>.    All Executory Contracts and unexpired leases will be rejected as of the Confirmation unless specifically (1) assumed prior to that date, or (2) the subject of a motion to assume on that date.

9.2     <u>Rejection Damages</u>.    Any Claimant whose Executory Contract is being rejected under this Plan, at the option of the Debtor, shall receive, in full and final satisfaction of its rejection Claim, either (i) the fair market value of the leased item(s) in Cash on the later of the Distribution Date and entry of a Final Order Allowing such Class 7 Claim, with title in the Collateral vesting in the Estate, or (ii) the return of the leased item(s) or equipment on the Effective Date or as soon as practical thereafter, upon the rejection of their applicable Executory Contract by the Debtor; provided, however, that the counter-party to a rejected Executory Contract shall have thirty (30) days thereafter to file with the Bankruptcy Court a rejection damage or deficiency Claim, to which the Debtor has the right to object on any grounds whatsoever.  In the event that the Debtor settles with the Holder of a rejection Claim with respect to the value of leased item(s), such settlement shall require Bankruptcy Court approval.

9.3     <u>Executory Contracts and Unexpired Leases; Inclusiveness</u>.    Each Executory Contract assumed or rejected under this Plan shall include (i) modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract, without regard to whether such agreement, instrument or other document is listed by the Debtor, and (ii) without limitation, all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, usufructs, reciprocal easement agreements, vault, tunnel or bridge agreements or franchises, and any other interests in real estate or rights in rem relating to such premises to the extent any of the foregoing are Executory Contracts, unless any of the foregoing agreements previously have been assumed or rejected.

9.4     <u>Approval of Rejection; Rejection Damages Claims Bar Date</u>.

The Confirmation Order shall constitute an order of the Bankruptcy Court approving the rejection of Executory Contracts under Section 9.1 above pursuant to Bankruptcy Code Section 365 as of the Effective Date.  Any Claim for damages arising from any such rejection must be filed within thirty (30) days after the mailing of notice of the entry of the Confirmation Order, or such Claim shall be forever barred, shall not be enforceable against the Debtor, the Estate, or any of his Properties and shall receive no Distribution under the Plan or otherwise on account of such Claim.

Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of (i) the assumption of the Executory Contracts to be assumed pursuant to this Article of the Plan, and (ii) the assumption and/or assignment of the Executory Contracts to be assumed and/or assigned pursuant to the Plan.

The assumption of any Executory Contract under the Plan shall be authorized notwithstanding the existence of any cross-default provision or other provision in such contract or lease that conditions the rights of the Debtor or the obligations of the non-debtor parties on (i) the insolvency or financial condition of the Debtor or (ii) performance under any other contract or agreement. Any breach, default, or failure to perform under any contract or agreement that is not assumed, or assumed and assigned, by the Debtor or the Debtor shall in no way constitute grounds to terminate the rights of the Debtor or the Debtor, or any of their assignees under any Executory Contract that is assumed, or assumed and assigned, under this Plan, or excuse non-performance by the other party to such Executory Contract, or otherwise affect, modify, or reduce the rights of the Debtor or the Debtor, or their assignees under such assumed, or assumed an assigned, Executory Contract.

On the later of the Distribution Date and entry of a Final Order Allowing such Cure Claim, all Holders of Allowed Cure Claims shall be paid, in full, in Cash. All disputed defaults that are required to be cured shall be cured within thirty (30) days after the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto.

## **ARTICLE 10**

## **CONDITIONS TO CONFIRMATION AND THE EFFECTIVE DATE**

10.1 <u>Confirmation Order</u>. The Plan shall be null and void and have no force and effect unless the Bankruptcy Court shall have entered a Confirmation Order which shall provide, among other things:Except as otherwise expressly provided in the Plan or Section 1141 of the Bankruptcy Code, on the Effective Date, the rights afforded in the Plan shall be in exchange for and in complete satisfaction, discharge and release of all Claims against, debts of or interest in the Debtor, his Estate, Assets and Property, of any nature whatsoever, including, without limitation, all interest, if any, on any such Claims, debts or Interests, whether such interest accrued before or after the date of commencement of the Chapter 11 Case, and any liability of a kind specified in Sections 502(g), 502(h) and 502(i) of the Bankruptcy Code.

(b) Except as otherwise provided in the Plan, all Holders of Claims and Equity Interests shall be precluded from asserting against the Debtor, his Estate, Assets and Property any other or further Claim or Interest based on any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, except for the rights in the Plan.

10.2 <u>Conditions Precedent to the Effective Date</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived by the Debtor in his sole, absolute and non-reviewable discretion:The Confirmation Order, which shall be in all respects satisfactory to the Debtor, shall have been entered by the Bankruptcy Court and shall have become a Final Order. Such Final Order shall expressly provide that the Debtor shall be entitled to manage the his business without interference as of the Confirmation Date.

(b)    The Confirmation Order shall authorize the Debtor to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, leases and other agreements or documents created in connection with the Plan and the transactions contemplated thereby (the "Plan Documents").

10.3    Waiver of Conditions to Confirmation and Effective Date.  Each of the conditions to Confirmation and the Effective Date may be waived in writing, in whole or in part, by the Debtor at any time, without notice or an order of the Bankruptcy Court.  The failure to satisfy or to waive any condition may be asserted by the Debtor regardless of the circumstances giving rise to failure of such condition to be satisfied (including any action or inaction by the Debtor).  The failure of the Debtor to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each such right will be deemed an ongoing right that may be asserted at any time.

## **RETENTION OF JURISDICTION**

11.1    Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes: To hear and determine all matters with respect to the assumption or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure Claim or the liquidation or allowance of any Claims arising therefrom;

(b)    To hear and determine any and all adversary proceedings, applications and contested matters;

(c)    To hear and determine any objections to Claims and to address any issues relating to Disputed Claims;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)    To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by Section 1142 of the Bankruptcy Code;

(f)    To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all Fee Applications;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(i)    Except as otherwise limited herein, to recover all Assets of the Debtor and Property of the Debtor's Estate, wherever located;

(j)      To hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(k)      To hear any other matter not inconsistent with the Bankruptcy Code;

(l)      To enter a final decree closing the Chapter 11 Case;

(m)      To ensure that Distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(n)      To decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(o)      To issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person or entity with the occurrence of the Effective Date or enforcement of the Plan, except as otherwise provided herein;

(p)      To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, and the Confirmation Order.

If the Bankruptcy Court abstains from exercising jurisdiction, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth herein, or if the Debtor elects to bring an action or proceeding in any forum other than the Bankruptcy Court, this Article of the Plan shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having jurisdiction over such matters.

## **ARTICLE 12**

## **EFFECT OF PLAN CONFIRMATION**

12.1   <u>Discharge</u>.  As provided in Section 1141 of the Bankruptcy Code, Confirmation of the Plan shall have the effect upon the Debtor, his Estate and Creditors holding Claims as specifically set forth therein.

(a)      <u>Limitation of Liability</u>.  Neither the Debtor, nor any of his employees, officers, directors, agents or representatives, or any Professional employed by him, including but not limited to Bruner, shall have or incur any liability to any Person whatsoever, including, specifically, any Holder of a Claim or Equity Interest, under any theory of liability (except for any Claim based upon willful misconduct or gross negligence), for any act taken or omission made in good faith directly related to formulating, preparing, disseminating, implementing, confirming or consummating the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, assumed, or entered into, or any other act taken or omitted to be

taken in connection with the Plan, provided that nothing in this paragraph shall limit the liability of any Person for breach of any express obligation it has under the terms of the Plan or under any agreement or other document entered into by such Person either after the Petition Date or in accordance with the terms of the Plan or for any breach of a duty of care owed to any other Person occurring after the Effective Date.  In all respects, the Debtor and any of his members, officers, directors, employees, advisors and agents shall be entitled to rely upon the advice of counsel with respect to his duties and responsibilities under the Plan.

        **(b)**    **INJUNCTION. EACH PERSON THAT IS A HOLDER OF A CLAIM AND/OR EQUITY INTEREST AND ANY OTHER PARTY IN INTEREST, AND EACH PERSON RECEIVING A DISTRIBUTION UNDER THE PLAN, AND EACH OF THEIR RESPECTIVE RELATED PERSONS IS PERMANENTLY, FOREVER AND COMPLETELY STAYED, RESTRAINED, PROHIBITED AND ENJOINED FROM, DIRECTLY OR INDIRECTLY, DERIVATIVELY OR OTHERWISE, COMMENCING OR CONTINUING ANY ACTION AGAINST THE DEBTOR OR ANY OF HIS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS AND AGENTS. ADDITIONALLY, EACH PERSON THAT IS A HOLDER OF A CLAIM AND/OR EQUITY INTEREST AND ANY OTHER PARTY IN INTEREST, AND EACH PERSON RECEIVING A DISTRIBUTION UNDER THE PLAN, AND EACH OF THEIR RESPECTIVE RELATED PERSONS IS PERMANENTLY, FOREVER AND COMPLETELY STAYED, RESTRAINED, PROHIBITED AND ENJOINED FROM, INDIRECTLY OR DERIVATIVELY, COMMENCING OR CONTINUING ANY ACTION AGAINST BFIT OR FMB, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS AND AGENTS.  AS OTHERWISE CONSISTENT WITH THIS PLAN, THERE SHALL BE NO EFFECT ON ANY DIRECT CLAIMS PERTAINING TO BFIT AND/OR FMB.  NOTHING HEREIN SHALL PREJUDICE ANY RIGHT, REMEDY, DEFENSE, CLAIM, CROSS-CLAIM OR COUNTERCLAIM OR THIRD-PARTY CLAIM THAT ANY PERSON MAY HAVE AGAINST ANY PERSON OTHER THAN WITH RESPECT TO ANY ACTION AGAINST THE DEBTOR, BFIT, FMB, OR ANY OF THEIR RESPECTIVE MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, ADVISORS AND AGENTS.  THIS INJUNCTION SHALL BE CONSIDERED A CHANNELING INJUNCTION, AS BFIT IS PROVIDING CONSIDERATION THAT WILL BE CHANNELED FOR THE BENEFIT OF CREDITORS, IN EXCHANGE FOR AND CONSIDERATION OF THIS INJUNCTION.** *SEE, E.G., IN RE TRANSIT GROUP, INC.***, 286 B.R. 811 (BANKR. M.D. FLA. 2002).**

        (c)    <u>Deemed Consent</u>.  By voting to accept the Plan, failing to vote or accepting any Distribution under the Plan, each holder of a Claim or Interest will be deemed, to the fullest extent permitted under applicable law, to have specifically consented to the releases, discharge, injunctions and stays set forth in this Plan.

        (d)    <u>No Waiver</u>.  Nothing contained in this Plan shall, or be deemed to limit, abridge or otherwise affect the rights of the Debtor to enforce, sue on, settle or compromise the rights, Claims or other matters retained pursuant to the Plan, including, but not limited to: (i) the Post-Confirmation Estate Claims, and (ii) the Avoidance Power Causes of Action.

**12.2    TERM OF INJUNCTION OR STAYS.** **UNLESS OTHERWISE PROVIDED, ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THIS CHAPTER 11 CASE PURSUANT TO SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE OR OTHERWISE IN EXISTENCE ON THE CONFIRMATION DATE SHALL BECOME PERMANENT AND REMAIN IN FULL FORCE AND EFFECT UNLESS OTHERWISE PROVIDED FOR BY BANKRUPTCY COURT ORDER.  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR INTERESTS AGAINST THE DEBTOR, BFIT AND/OR FMB ARE PERMANENTLY ENJOINED, ON AND AFTER THE EFFECTIVE DATE, FROM (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY SUCH CLAIM AGAINST THE DEBTOR, (B) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING INDIRECTLY OR DERIVATIVELY WITH RESPECT TO ANY SUCH CLAIM AGAINST BFIT AND/OR FMB, (C) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (D) THE ENFORCEMENT, ATTACHMENT, COLLECTION OR RECOVERY BY ANY MANNER OR MEANS OF ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST BFIT AND/OR FMB ON ACCOUNT OF ANY SUCH INDIRECT OR DERIVATIVE CLAIM, (E) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, (F) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST BFIT AND/OR FMB OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF BFIT AND/OR FMB ON ACCOUNT OF ANY SUCH INDIRECT OR DERIVATIVE CLAIM, (G) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTOR ON ACCOUNT OF ANY SUCH CLAIM, AND (H) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM BFIT AND/OR FMB OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF BFIT AND/OR FMB ON ACCOUNT OF ANY SUCH INDIRECT OR DERIVATIVE CLAIM.  SUCH INJUNCTION SHALL EXTEND TO THE DEBTOR, BFIT AND/OR FMB, AND THEIR RESPECTIVE PROPERTY AND INTERESTS IN PROPERTY. NOTHING CONTAINED IN THIS SECTION SHALL AFFECT ANY CLAIMS AGAINST BFIT AND/OR FMB DIRECTLY (*I.E.*, LOAN OBLIGATIONS AND/OR GUARANTEES OUTSIDE THE EXPRESS TERMS OF ANY SETTLEMENT INCORPORATED HEREIN).**

## ARTICLE 13

## MISCELLANEOUS PROVISIONS

13.1    <u>Payments in Full Satisfaction</u>.  Payments of the Distribution to be made pursuant to the Plan to Holders of Claims shall constitute the full settlement, release, discharge and

satisfaction of all Claims, if any, against the Debtor, the Estate, and his Property, whether or not such Claim has been timely asserted by such Holder and whether or not such Holder shares in the distribution from any of the funds to be paid under the Plan, pursuant to Section 1141 of the Bankruptcy Code.

13.2    <u>Amendment or Modification of the Plan</u>.    Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time before the Confirmation Date, provided such amendments or modifications satisfy the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan after the Confirmation Date in accordance with Section 1127(b) of the Bankruptcy Code.  The Debtor reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date upon the consent of the Creditor whose Allowed Claim treatment is being modified.

13.3    <u>Exemption from Transfer Taxes</u>.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

13.4    <u>Resolution of Causes of Action</u>.  The Debtor expressly preserves his right to pursue, among other things, any Post-Confirmation Estate Claims.  However, as the Debtor believes all potential Avoidance Power Cause of Action has either been resolved through the Cadence Settlement, the Hancock Settlement, and/or the settlement payments made pursuant to this Plan, all Avoidance Power Causes of Action have therefore been completely resolved, and thus the Debtor does not intend to pursue any Avoidance Power Cause of Action on behalf of the Estate.

13.5    <u>Compliance With Tax Requirements</u>.  In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and all Distributions hereunder shall be subject to such withholding and reporting requirements.

13.6    <u>Payment of Statutory Fees</u>.  All fees payable pursuant to Section 1930 of the Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in Cash equal to the amount of such fees on the Effective Date.  The Debtor shall timely pay post-Confirmation quarterly fees assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the Bankruptcy Court enters a final decree closing the Chapter 11 Case, or enters an order either converting the Chapter 11 Case to a case under Chapter 7 or dismissing the Chapter 11 Case. After the Confirmation Date, the Debtor shall file with the Bankruptcy Court and shall transmit to the U.S. Trustee a true and correct statement of all Disbursements made by the Debtor for each month, or portion thereof, the Chapter 11 Case remains open in a format prescribed by the U.S. Trustee.

13.7    <u>Severability</u>.    In the event that the Bankruptcy Court determines, before the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the Holder of such Claims or Equity Interests as to which the provision is determined to be invalid, void or unenforceable.  The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

13.8    <u>Binding Effect</u>.    The Plan shall be binding upon and inure to the benefit of the Debtor, the Holders of Claims and Equity Interests, and their respective successors and assigns.

13.9    <u>Notices</u>.    All notices, requests or demands in connection with this Plan shall be in writing and shall be deemed to have been given when received, or if mailed, five (5) days after the date of mailing, provided such writing shall be sent by registered or certified mail, postage prepaid, return receipt requested.  If sent to the Debtor, addressed to:

Bruner Wright, P.A.
Attn: Robert C. Bruner
2810 Remington Green Circle
Tallahassee, FL 32308
TEL: (850) 385-0342
FAX: (850) 270-2441

13.10    <u>Headings</u>.    The headings used in this Plan are inserted for convenience only and neither constitute a portion of this Plan nor in any manner affects the provisions of this Plan.

13.11    <u>Governing Law</u>.    Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law of such jurisdiction.

13.12    <u>Reservation of Rights</u>.    Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtor with respect to the Holders of Claims or Equity Interests before the Effective Date.

13.13    <u>Section 1145 Exemption</u>.    Pursuant to Section 1145(a) of the Bankruptcy Code, the offer, issuance, transfer or exchange of any security under the Plan, or the making or delivery of an offering memorandum or other instrument of offer or transfer under the Plan, shall be exempt from Section 5 of the Securities Act or any similar state or local law requiring the registration for offer or sale of a security or registration or licensing of an issuer or a security.

13.14    <u>Implementation</u>.    The Debtor shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in the Plan.

13.15  <u>Inconsistency</u>.  In the event of any inconsistency among the Plan, the Disclosure Statement or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

13.16  <u>Compromise of Controversies</u>.    Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests or controversies resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the  Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, and all Holders of Claims and Interests against the Debtor.

Dated: December 1, 2020

**Bruner Wright, P.A.**
*Counsel for the Debtor-In-Possession*
2810 Remington Green Circle
Tallahassee, FL 32308
Office: (850) 385-0342
Fax: (850) 270-2441

By:    */s/ Robert C. Bruner*
Robert C. Bruner
Florida Bar No. 0065876
rbruner@brunerwright.com
Byron Wright III
Florida Bar No. 118971
twright@brunerwright.com